Charles JOHNSON, et ux., Appellants,

v.

J.M. HUBER CORPORATION, et al., Appellees.

No. 07–84–0214–CV.

Court of Appeals of Texas, Amarillo.

Aug. 30, 1985.

Rehearing Denied Sept. 23, 1985.

---

1. Ch. 55, sec. 234, 1955 Tex.Gen.Laws 88, *amended by* ch. 173, sec. 15, 1971 Tex.Gen.Laws 984.

Jerry Kolander, Lubbock, for appellants.

John Mozola, Amarillo, Thomas L. Edmonds, Borger, Robert D. Lemon, Perryton, for appellees.

Before REYNOLDS, C.J., and DODSON and COUNTISS, JJ.

REYNOLDS, Chief Justice.

Mr. and Mrs. Charles Johnson sought monetary damages from defendants J.M. Huber Corporation, Headington Bros. Holding, Inc., and Diamond Shamrock Corporation, as well as from other defendants not parties to this appeal, for the salt water pollution of the fresh water underlying Section 12, Block M–16, AB & M Survey, Hutchinson County, Texas, allegedly caused by the defendants' disposal of salt water in the production of petroleum products on nearby lands. J.M. Huber, Headington Bros., and Diamond Shamrock moved for summary judgment on the grounds that the claims asserted by the Johnsons (1) have been released by the compromise and settlement agreement which terminated two previous lawsuits, and (2) are barred by the two-year statute of limitation. The Johnsons responded that their claims were not released by the compromise and settlement agreement, and that under the summary judgment proof,

there exists the fact issue whether the limitation period has run against their claims.

The trial court granted the summary judgment motion and rendered judgment decreeing that the Johnsons take nothing. Concluding that the defendant-movants did not establish their entitlement to summary judgment on either of the two specific grounds expressly presented to the trial court, we reverse and remand.

The Johnsons own the surface of Section 12, Block M–16, AB & M Survey, Hutchinson County, Texas, which is used primarily for grazing cattle. They also own Section 13, situated adjacent to and immediately west of Section 12, and Section 20, situated adjacent to and immediately south of Section 13, both of which are cultivated and produce crops.

On 26 November 1972, Charles Johnson filed his complaint in Cause No. CA–2–74–159 on the docket of the United States District Court for the Northern District of Texas, Amarillo Division, to recover, as stated in his fifth amended complaint, damages from J.M. Huber and Diamond Shamrock, two of the defendant-appellees in the present appeal, and others, for their salt water pollution of the fresh water underlying Section 20 and the south one-half of Section 13. Afterwards on 12 July 1978, the Johnsons filed their original petition in Cause No. 13,596 on the docket of the 84th Judicial District Court of Hutchinson County to recover damages from J.M. Huber and Diamond Shamrock, and one other defendant, for their salt water pollution of the fresh water underlying the south one-half of Section 13.

Thereafter on 8 January 1979, the Johnsons, as plaintiffs in the two lawsuits, together with their attorney of record, executed a compromise and settlement agreement because "[a]ll parties desire to settle and compromise the claims set out in said lawsuits," and "for the purpose of avoiding further litigation" without the admission by the defendants of "any liability by the compromise and settlement," with "[j]udgment ... to be entered in the above suits [Cause No. CA–2–74–159 and Cause No.

13,596] dismissing such suits with prejudice." By the terms of the fifth paragraph in the agreement, the Johnsons, in consideration of $180,000 cash paid,

> do hereby release ... the Defendants [J.M. Huber and Diamond Shamrock and the other named defendants, which do not include the name Headington Bros.] from any and all claims, actions, causes of actions, demands and compensation, known or unknown, which have been or could have been asserted by the [Johnsons or others] ... which may now own or may hereafter acquire or succeed to any interest in the land or underground water, in either suit described above, and from any and all claims ... for damages to the land or pollution of the underground water underlying Section 20 and the South one-half of Section 13, in Block M–16, AB & M Survey, Hutchinson County, Texas.

In addition, and by the following sixth paragraph in the agreement, the Johnsons

> further release ... the Defendants from any and all claims, actions, causes of actions, demands and compensation, known or unknown, which Plaintiffs [the Johnsons] ... might assert for damages to the land or pollution of the underground water underlying the Plaintiffs' 132 acre tract in Section 13, Block M–16, AB & M Survey, Hutchinson County, Texas which lies North of the South one-half of said Section 13, insofar as damages to the land or pollution of the underground water may have been caused by [operations] by the Defendants ....

Further, the next, the seventh, paragraph in the agreement provides that:

> The releases set forth in the two preceding paragraphs are intended to be covenants running with the land and fully binding upon any person ... now owning or which may hereafter acquire, own or succeed to any interest in and to such land or underground water, and who may hereafter assert any claim for damages to and/or pollution of the said land and underground water.

And, last, the signatories "warrant and represent that ... this is a full, final and complete release and settlement of any and all claims that are described above."

Afterwards on 16 March 1981, the Johnsons filed the present lawsuit. By their pleadings, which are strikingly similar to the pleadings in the two previously compromised and settled lawsuits, the Johnsons allege that in the spring of 1979, an irrigation well was drilled on Section 12 which produced water polluted by salt. Further, they allege that in producing petroleum products in the vicinity of Section 12, J.M. Huber, Diamond Shamrock and Headington Bros., as well as the other named defendants, have

> disposed of large amounts of salt water by various means including the use of surface pits in the area in the immediate vicinity of the lands owned by [the Johnsons]. This salt water has percolated down into the fresh ground water supply which had previously been available to the [Johnsons] for irrigation purposes and has polluted and infiltrated the fresh water strata from which [the Johnsons] were producing water.

The salt water pollution was, under the Johnsons' pleadings, a permanent injury which, the Johnsons allege, was caused by the defendants' acts which constitute negligence, negligence per se, a nuisance, a trespass, and a taking of their property without due compensation.

To prevail on their motion for summary judgment, the defendant-movants had to meet and defeat the Johnsons' cause of action as pleaded. *Torres v. Western Casualty and Surety Company*, 457 S.W.2d 50, 52 (Tex.1970). That is, the movants had to establish as a matter of law that the 1979 compromise and settlement agreement released the claim now made by the Johnsons for permanent injury to Section 12, or that the Johnsons' right to assert the claim on 16 March 1981 is barred by the two-year statute of limitation.

The motion must fail on the ground of the pleaded release, the Johnsons argue, since the parties specifically excluded Sec-

tion 12 by omitting it from, and without making any reference to it, in the compromise and settlement agreement. To the contrary, the defendant-movants respond, the present claim as to Section 12 was included in the release first set out in the fifth paragraph of the agreement. This obtains, they argue, because the fifth-paragraph release is a general release from any and all claims, known or unknown, which have been or could have been asserted by the Johnsons, followed and unlimited by a specific release from any claims, known or unknown, for damages to the land or pollution of the underground water underlying Section 20 and the south one-half of Section 13. Notwithstanding, our analysis of the agreement results in the determination that it does not conclusively establish the Johnsons released the claim for damage to Section 12 for which they now sue.

■ All of the litigants stand on the compromise and settlement agreement as written; therefore, it must be regarded as being what it purports to be on its face. *Hart v. Traders & General Ins. Co.*, 144 Tex. 146, 189 S.W.2d 493, 494 (Tex.1945). And its import must be determined under the rules relating to the construction of a contract, which it is, from a consideration of the entire instrument to ascertain and give effect to the true intention of the parties, *Loy v. Kuykendall*, 347 S.W.2d 726, 728 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.), in accordance with its plain language. *General American Indemnity Company v. Pepper*, 161 Tex. 263, 339 S.W.2d 660, 661 (1960).

The compromise and settlement agreement is referenced to the then pending lawsuits, Cause No. CA-2-74-159 and Cause No. 13,596, in which the Johnsons seek to recover, respectively, "for certain injuries to their land" and "damages," as "more fully set out in the pleadings filed in said cause[s]." In those lawsuits, the Johnsons sought damages for the salt water pollution of the fresh water underlying only Section 20 and the south one-half of Section 13. The agreement expresses that

"[a]ll parties desire to settle and compromise the claims set out in said lawsuits."

The release contained in the fifth paragraph of the agreement is expressed in one sentence. By the first part of the sentence, the Johnsons released all claims, known or unknown, which they had or could have asserted "in either suit described above;" by the remainder of the sentence, the Johnsons released all claims, known or unknown, which they had or could have asserted "for damages to the land or pollution of the underground water underlying Section 20 and the South one-half of Section 13."

■ At this point in the agreement, the release, by its plain language, is made applicable to all of the claims set out or which could have been asserted in the two lawsuits, none of which related to Section 12. There, then, is nothing in the language to remove the release from the general rule that a release covers only claims in existence or being urged at the time it is delivered, *Berry v. Guyer,* 482 S.W.2d 719, 720 (Tex.Civ.App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); and therefore, nothing to show as a matter of law that Section 12 was intended to be covered.

This determination is reinforced by two other provisions in the agreement. First, the sixth paragraph released the defendants from any and all claims which the Johnsons might assert for damages to, or pollution of the underground water underlying, the north 132 acres of Section 13, a tract the Johnsons neither included in nor sought damages for by their pleadings in the two lawsuits. If the parties had intended the first part of the sentence in the fifth-paragraph release to include all adjacent lands owned by the Johnsons, albeit without expressing the intent in the otherwise plain language of the agreement, there would have been no reason to specify this additional tract for inclusion. It follows that the only reason for the inclusion of this tract was that the parties intended the fifth-paragraph release to cover only Section 20 and the south one-half of Section 13.

■ Second, the agreement provides that the releases are intended to be covenants running with the land. In order for the covenant to run with the land, there must be privity of estate between the parties to the agreement. *Westland Oil Development Corp. v. Gulf Oil,* 637 S.W.2d 903, 910 (Tex.1982). This summary judgment record does not reveal that the defendants have an interest in Section 12 which would subject that section to the intended covenant so as to indicate an intent for the section to be included in the fifth-paragraph release.

Consequently, we conclude that the agreement does not as a matter of law release the claim for salt water pollution of Section 12 made by the Johnsons in their present suit. Thus, the summary judgment cannot be supported on the ground of the release, and the Johnsons first point of error is sustained without addressing the question whether Headington Bros. are covered by the release by virtue of common law doctrines, such as the doctrine of virtual representation.

■ The defendant-movants also predicated their entitlement to summary judgment on the ground that the Johnsons' claim for damages for salt water pollution of the water under Section 12, asserted in their action filed on 16 March 1981, was barred by the two year statute of limitation. Tex.Rev.Civ.Stat.Ann. art. 5526 (Vernon Supp.1985). To be entitled to summary judgment on this affirmative defense, the defendant-movants had to negate the Johnsons' pleading that the salt water pollution was discovered in the spring of 1979 by conclusively establishing that they discovered or should have discovered the pollution more than two years before the claim was asserted on 16 March 1981. *Weaver v. Witt,* 561 S.W.2d 792, 794 (Tex. 1977).

The Johnsons submit that the summary judgment cannot be based on the limitation defense because a fact issue exists whether the limitation period ran before they sought relief. This results, they argue,

since Charles Johnson's affidavit supporting the response to the summary judgment motion states that they had no reason to believe the water under Section 12 was polluted until an irrigation well was drilled on or about the first part of April 1979, and later tested, which was less than two years before their claim was asserted.

Again, to the contrary, the defendant-movants maintain that the Johnsons were aware of, or had knowledge of facts causing a prudent person to discover that, the damages now claimed occurred more than two years before the claim was made. However, for the reasons to be articulated, we perceive the events on which the defendant-movants rely to merely raise the fact issue whether, instead of conclusively establishing that, the Johnsons discovered or should have discovered the pollution more than two years before suit.

As previously noticed, the Johnsons pleaded a permanent injury to Section 12 caused by salt water pollution of its underground water resulting from the defendants' operations on lands in the immediate vicinity. To meet the pleaded cause of action, as they must to summarily prevail, the defendant-movants initially contend that Charles Johnson gave deposition testimony that Diamond Shamrock at one time not later than 1962 had a large unlined pit on Section 12, which enabled water to "go down" and which he saw, around 1960, overflow, killing vegetation. Therefore, they argue, not only do the Johnsons complain of conduct that occurred about twenty years before the filing of their suit, but if the overflow occurred, it was unlawful conduct that, by authority of *Tennessee Gas Transmission Co. v. Fromme*, 153 Tex. 352, 269 S.W.2d 336, 337–38 (1954), then gave rise to a cause of action from the time of which limitations will run, even though the damages resulting from the act may not be fully developed until after the limitation period has expired.

Yet, the one instance of overflow merely evinces a temporary injury, not the permanent injury, *Kraft v. Langford*, 565 S.W.2d 223, 227 (Tex.1978), for which the Johnsons are claiming damages. Moreover, the overflow would not, according to hydrologist Steve Reed, necessarily migrate deep enough to affect the underground water supply. Further, the fact that Diamond Shamrock's unlined pit on Section 12 enabled the water to "go down" does not, of itself, conclusively establish the permanent injury of underground pollution made the subject of the Johnsons' suit. There is no summary judgment proof that the pit water migrated with the continuum necessary to produce the permanent injury, *id.*, or to then make the Johnsons aware of the injury they allege resulted from the defendants' operations on other lands; indeed, Johnson's deposition testimony reveals that in the early 1970s, Diamond Shamrock drilled two water wells on Section 12, one in the southwest quarter and the other in the southeast quarter, which, along with a windmill in the northeast quarter of the section, produced fresh, drinkable water. This state of the summary judgment record does not show as a matter of law that in 1960 or 1962 the Johnsons either discovered, or were on notice of facts leading a prudent person to discover, the injury for which they now claim damages.

Next, the defendant-movants contend, without any citation of supporting authority, that since Charles Johnson acknowledged he was aware of the operations of Headington Bros. on Section 13 which were taken over by another party in 1971, it would be a gross distortion of law and equity to allow the Johnsons to now assert tolling of limitations. But the issue here with respect to Headington Bros.' operations, as it is with the other defendants' operations, is not the time of the operations allegedly causing the injury, but when the Johnsons' cause of action accrued by their discovery, or by when they should have discovered, the salt water invasion of the fresh water under Section 12. *Bayouth v. Lion Oil Co.*, 671 S.W.2d 867, 868 (Tex. 1984).

Additionally, defendant-movants contend that if the Johnsons' cause of action did not accrue at the time the salt water pit over-

flowed or by 1962, then the cause of action accrued in 1975, or at the latest in January of 1979, when the Johnsons had actual or constructive knowledge of the salt water invasion. The knowledge is evidenced, the defendant-movants say, by the pleadings in the two previously settled lawsuits and by Charles Johnson's 1975 and 1978 depositions. The pleadings and the depositions show, the defendant-movants submit, that the Johnsons knew of salt water pits north and west of and on Sections 20 and 13, that they knew of the salt pollution of the water under those two sections and under Section 134 located approximately three miles east of Section 12, and that Charles Johnson knew the water flow under Section 20 was to the east and then to the south. From this, defendant-movants conclude that the Johnsons knew, or were put on notice, of their cause of action more than two years before they filed this lawsuit.

However, when the referenced portions of Charles Johnson's depositions are examined, they reveal his indicated knowledge in 1978 of the direction of the flow of the underground water, or the source of the pollution of Section 12's underground water, is not that "clear, positive and direct" evidence upon which a summary judgment may be based. *See* Tex.R.Civ.Pro. 166–A(c). When asked in 1975 if he knew the direction of the underground water flow in the area of Section 20, he answered:

> I believe ... I can't answer it truthfully. But from the way I understand it, it moves to the east, I believe, and south.

And, when asked a similar question in his 1978 deposition, he stated, "Hearsay, because I don't know; I can't see it ... says to the east and south," adding that prior to 1974, he had not discussed with anyone whether or not salt water might be migrating toward his land. Later in the deposition, he admitted to an understanding that underground water in the area of Section 20 flowed to the east and somewhat to the south, but he denied knowing that salt water in the surface pits would move when it reached the underground water formation.

■ Given this state of the record, it does not establish as a matter of law that the Johnsons had actual or constructive knowledge in January of 1979 or before that underground salt water "in the area of Section 20" moving east and then south was flowing into the water beneath Section 12, which is situated northeast of Section 20. This conclusion is warranted here since every reasonable inference must be indulged in favor of the Johnsons and any doubts resolved in their favor. *Bayouth v. Lion Oil Co., supra.* Because this genuine fact issue of knowledge material to the affirmative defense of limitations exists unresolved, the defendant-movants have failed to establish they are entitled to summary judgment on this defense as a matter of law. The Johnsons' second point of error is sustained.

■ In sustaining the Johnsons' points that summary judgment was improper on the specific grounds of release and limitations expressly presented to the trial court, we have not overlooked the defendant-movants final contention that if the Johnsons' cause of action had not accrued prior to 1979, their waiting until early in 1979 to drill test holes on Section 12 does not constitute due diligence in discovering the existence of their cause of action. As presented, the contention advances on appeal the defense of laches, an affirmative defense. *See* Tex.R.Civ.Pro. 94. Aside from the reality that the defense of undue delay or laches ordinarily presents issues of fact and not questions of law, particularly in summary judgment proceedings, *Layne v. Darnell*, 454 S.W.2d 474, 477 (Tex.Civ.App.—Fort Worth 1970, writ ref'd n.r.e.), the defense is unavailable to validate the summary judgment rendered.

If the affirmative defense was to be relied upon, it was required to be pleaded in answering the Johnsons' petition. Tex.R. Civ.Pro. 94. But the affirmative defense was not pleaded and, therefore, it cannot serve as a ground for granting the summary judgment. *DeBord v. Muller*, 446 S.W.2d 299, 301 (Tex.1969). Beyond that, the defense was not expressly presented to

the trial court by the summary judgment motion as a specific ground of entitlement to the summary judgment and, consequently, it will not be considered on appeal to validate the summary judgment rendered. Tex.R.Civ.Pro. 166–A(c); *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671, 678 (Tex.1979).

The judgment is reversed and the cause is remanded.