326 So.2d 754

**BLUE CROSS AND BLUE SHIELD OF ALABAMA, a corporation**

v.

**Ellen BOWEN.**

**Civ. 672.**

Court of Civil Appeals of Alabama.

Feb. 4, 1976.

Lawrence B. Clark, Birmingham, for appellant.

No brief for appellee.

BRADLEY, Judge.

This is an appeal from a judgment against Blue Cross and Blue Shield of Alabama, a Corporation, hereinafter referred to as Blue Cross, in the amount of $2,727.-35 and costs, rendered by the Circuit Court of Tallapoosa County.

The evidence discloses the following:

On September 21, 1968 Mrs. Ellen Bowen, appellee here, applied for group hospital, medical, and surgical benefits insurance with Blue Cross. Her husband, Omer Bowen, was listed within the coverage as the spouse of the applicant. Several children were also listed as dependents of the applicant.

Mrs. Bowen, her spouse, and dependent children were accepted by appellant for hospital, medical and surgical benefits insurance coverage effective October 1, 1968.

At all times relevant to this suit, Omer Bowen, the husband of appellee, was the named insured (as distinguished from a spouse or other eligible dependent) on a group hospital, medical and surgical benefits insurance policy written by the Jefferson County, Alabama and Vicinity Carpenters District Council Health and Welfare Fund (hereinafter referred to as "The Fund".) The premium for this insurance was paid by Omer Bowen's employer as a part of the benefits agreed to in collective bargaining negotiations between the employer and Mr. Bowen's union. Eligibility for coverage under The Fund's policy depends upon the number of hours each union member works during each quarter. This policy of insurance does not have any "coordination of benefits" provision.

On August 13, 1974 Omer Bowen was admitted to Montgomery Baptist Hospital where he remained until his discharge on September 6, 1974. He was treated for a prepyloric autral ulcer with obstruction and underwent surgery during that stay. Appellee and her husband told the Montgomery Baptist Hospital insurance or admitting clerk that they had insurance with both The Fund and with the appellant.

The total cost of the medical treatments incurred during that stay is $3,882.75.

Blue Cross paid Montgomery Baptist Hospital $3,178.75; The Fund paid the hospital $3,573.64.

On October 25, 1974, at the same time Blue Cross approved payment to the Montgomery Baptist Hospital, it mailed to Mrs. Bowen an inquiry requesting information on other group insurance coverage available for Mr. Bowen's hospitalization. Following receipt of this inquiry, on a date unknown, Mrs. Bowen answered and returned that inquiry to appellant along with a letterhead of The Fund.

Following receipt of this information, on December 16, 1974, appellant sent a "medical expense insurance duplicate coverage inquiry" to The Fund. That inquiry was answered by The Fund on December 17. The answer listed insurance benefits provided by The Fund for Mr. Bowen's hospitalization. After receiving The Fund's response, on December 18, 1974, Blue Cross mailed coordination of benefits advisory letter to appellee and the Montgomery Baptist Hospital. Blue Cross claimed a refund from Mrs. Bowen of Three Hundred Nineteen and 88/100 Dollars ($319.88), and a refund from the hospital of Two Thousand Three Hundred Two and 43/100 Dollars ($2,302.43). Blue Cross never obtained its refund from the hospital or from appellee. On December 27, 1974 Mrs. Bowen filed this suit seeking a $3,800 judgment against appellant.

The Blue Cross contract with Mrs. Bowen provides that Blue Cross has no obligation to pay for benefits provided under another group plan if that other group plan is the "primary plan", and there is further provision for determining which plan is primary. Section V.12(a) of the Hospital Service Certificate portion of the contract issued by Blue Cross provides that the plan other than Blue Cross will be the primary plan "[i]f the other plan does not include a coordination of benefits or non-duplication provision, . . ." Section V.12(d) of

that same portion of the Blue Cross contract specifically gives Blue Cross the right to recover any payments it has previously made when benefits are also provided by a group plan which has primary coverage:

"If it is determined that benefits under this Contract should have been reduced because of benefits provided under another group plan, the Corporation [Blue Cross] will have the right to recover any payment already made which is in excess of its liability. . . ."

Departmental Regulation 56 adopted by the Alabama Commissioner of Insurance dealing with coordination of benefits among group health insurance companies became effective on September 1, 1974, during Omer Bowen's hospitalization.

On March 24, 1975 the trial court issued an order stating:

"The Court is of the opinion that the only basis of claim by the Plaintiff in this cause is possibly waiver by the defendant of the defense of payment by the primary group carrier. The waiver would depend on whether the defendant paid for the hospitalization after receiving the written response to the inquiry concerning other coverage which is Exhibits 8 and 9. In this regard, the stipulation of facts states that the date of receipt of Exhibits 8 and 9 by the defendant is unknown and that payment was authorized prior to receipt of notice.

"The case is reopened for additional evidence to clear up the point concerning notice and to receive any other evidence the parties may want to introduce. This may be done by affidavits or orally before the Court at the option of the parties."

On June 18, 1975 the trial court entered judgment for Mrs. Bowen.

At one point there was confusion as to whether or not any oral testimony

was heard. However, as a result of the trial court's order of December 1, 1975, it is established that this case was submitted entirely on stipulations, affidavits, and exhibits. Therefore, it is the province of the appeals court to render a judgment on the evidence, *McCulloch v. Roberts*, 292 Ala. 451, 296 So.2d 163. This evidence is insufficient to make out a case of waiver or estoppel against Blue Cross. The judgment below is reversed. There is no direct evidence that Blue Cross had notice or knowledge at the time it paid the instant claim that, under the provisions of appellee's contract, another insurer was primarily liable on the claim. Such prior knowledge would be essential to a finding of waiver, *Spivy-Johnson Portrait Co. v. Belt Automobile Indemnity Ass'n*, 210 Ala. 681, 99 So. 80.

There is a conflict in the evidence regarding the date appellee might have mailed its reply to Blue Cross' coordination of benefits letter. However, resolving this conflict either way would not determine the notice question. Granted, upon receipt of that reply letter from appellee, Blue Cross would have had notice that another insurer existed. But that letter did not contain facts essential for the determination of primary and secondary liability. It is undisputed from the evidence that this necessary information was received by Blue Cross, subsequent to their own inquiry, no earlier than December 17, sometime after appellant had made its payments to the hospital. Thus, Blue Cross did not have knowledge of the facts necessary to decide it was only a secondary insurer until after it had already paid as a primary insurer. This cannot support a waiver of the right to a refund.

■■ In the instance of coordination of benefits, it is not proper for an insurer to withhold payment of claims while a prompt, good-faith determination of its primary or secondary status continues. Regulation 56 provides:

" . . . Occasionally, this [delay in determination] will necessitate a carrier making payment as the primary carrier with a right of recovery in the event that subseqeunt investigation proves that payment as a secondary carrier should have been made."

Accordingly, the regulation further provides:

"Whenever payments have been made by the insurer with respect to Allowable Expenses in a total amount, at any time, in excess of the maximum amount of payment necessary at that time to satisfy the intent of this provision, the insurer or service plan shall have the right to recover such payments, to the extent of such excess, . . . ."

Regarding the sequence of payment and determination, it is not material that appellee's claim accrued prior to the effective date of the regulation because appellee is neither involved in nor prejudiced by the payment process: payments were made directly by Blue Cross to Montgomery Baptist Hospital. Because the regulation was effective prior to the date of payment, and because the payment was hastened rather than delayed thereby, Blue Cross was correct in following Regulation 56.

Thus the evidence in this case shows that Blue Cross was complying with regulations in paying Montgomery Baptist Hospital while its inquiry to determine its liability continued. This is no waiver. Hence, the judgment below is reversed and the cause remanded to the trial court for the entry of a judgment in favor of defendant, Blue Cross and Blue Shield of Alabama, a Corporation.

Reversed and remanded.

WRIGHT, P. J., and HOLMES, J., concur.