435 So.2d 745 (1983)
SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY
v.
Anthony O. MITCHELL.
Civ. 3669.
Court of Civil Appeals of Alabama.
July 6, 1983.
*746 Lewis W. Page, Jr. of Lange, Simpson, Robinson & Somerville, Birmingham, and Steve A. Baccus of Almon, McAlister, Ashe, Baccus & Smith, Tuscumbia, for appellant.
Luke E. Alexander of Guin, Bouldin & Alexander, Russellville, for appellee.
BRADLEY, Judge.
This is an appeal from an order of the Franklin County Circuit Court granting summary judgment in favor of the plaintiff. We reverse.
Anthony O. Mitchell was employed by Alabama Farm Bureau Insurance Company to sell insurance in the Haleyville, Alabama area. By virtue of his employment, he also became an agent for Southern Farm Bureau Insurance Company, which is headquartered in Jackson, Mississippi and through which Alabama Farm Bureau wrote policies. During December of 1967 and January of 1968, Mitchell entered into two employment agreements which comprise the subject matter of this litigation. The December 28, 1967 agreement was executed between Mitchell and Alabama Farm Bureau and provided that all first-year and renewal premium commissions earned by him would be assigned to Alabama Farm Bureau in the event that he failed to work for the company for a period of five years. The other contract, dated January 1, 1968 and entered into between Mitchell and Southern Farm Bureau, contained two provisions by which the agent agreed not to represent competing insurance companies while Southern Farm Bureau was licensed to do business within the state.
Subsequent to the date of these agreements, Alabama Farm Bureau ceased to write insurance through Southern Farm Bureau and began instead to issue policies through Federated Guaranty Life Insurance Company. Mitchell and other agents continued, however, to service policies which had been written through Southern Farm Bureau and to receive renewal commissions on them. This arrangement existed between Mitchell and Alabama Farm Bureau from 1972 through March of 1974, at which time his employment was terminated by Alabama Farm Bureau, and he began to represent other insurance companies in the Haleyville area. Mitchell ceased to receive Southern Farm Bureau renewal premium commissions in 1975 when the company learned that he was serving as agent for other insurers. Thereafter, in 1976 Mitchell filed a complaint to recover $7,174.69 in back commissions which he claimed to be due him from Southern Farm Bureau. Acting on cross-motions for summary judgment after considering affidavits of the parties, a stipulation of facts, and *747 depositions, the Franklin County Circuit Court granted summary judgment in favor of Mitchell. Southern Farm Bureau has appealed to this court.
The threshold issue raised for our consideration is a question as to whether the contract between Mitchell and Southern Farm Bureau under which he agreed to represent no other insurance companies in Alabama was void under section 8-1-1, Code 1975. This section provides, in pertinent part:
"(a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.
"(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein."
Southern Farm Bureau urges us to find that the terms of the agreement do not fall within the prohibitions of section 8-1-1, Code 1975, and that the agreement stands as an absolute bar to any recovery by Mitchell. Mitchell, on the other hand, urges us to uphold the trial court's decision on the basis of the fact that the contract was void under section 8-1-1, Code 1975.
The agreement between Mitchell and Southern Farm Bureau contains two anti-competitive clauses. The first of these is termed "responsibilities" and is numbered as paragraph 2(B). Under it Mitchell covenanted not to represent any other insurance company in the state of Alabama without first obtaining written consent from Southern Farm Bureau. The other anti-competitive agreement is paragraph 7(D)(2) which deals with payment of commissions after termination of the contract. It states that no renewal commissions are to be paid to the agent after termination of the contract if he represents any other insurance company while Southern Farm Bureau is licensed to do business in Alabama.
Mitchell's argument in support of the trial court's decision to grant summary judgment in his favor urges us to find that paragraph 2(B) and paragraph 7(D)(2) are void because they are a prohibited restraint on trade under section 8-1-1, Code 1975. He asks us to strike the two clauses from the contract because they fall within the purview of the statute and are an unreasonable restraint on trade within its terms. This position is premised on his argument that the two clauses provide for damages in the event that he works for a competing insurance company. See Associated Surgeons, P.A. v. Watwood, 295 Ala. 229, 326 So.2d 721 (Ala.1976). He further contends that the clauses serve to prohibit him from engaging in the business of selling insurance and that they are unreasonable in scope.
We note that as a general proposition, an insurance agent has no inherent right to receive renewal premium commissions. Any such right accruing to him depends solely and strictly on the terms of his contract with the company he represents. Southern States Life Insurance Co. v. Allan, 38 Ala.App. 467, 87 So.2d 439 (Ala.Ct. App.1956).
The provisions under which Mitchell agreed to work for Southern Farm Bureau exclusively were forfeiture clauses and provided that in the event that he represented a competing insurance company, he would forfeit his right to receive renewal premium commissions. For this reason we must disagree with Mitchell's argument that the contract provided for damages and in so doing was a prohibited restraint on trade under section 8-1-1, Code 1975. In its decision of Courington v. Birmingham Trust National Bank, 347 So.2d 377 (Ala.1977), the supreme court held that a forfeiture-by-competition provision in a pension plan agreement was neither an unreasonable restraint on trade nor an unreasonable contract. Thus, Mitchell's contract involves valid forfeiture provisions rather than invalid damages clauses *748 and does not fall within the terms of section 8-1-1.
The rationale for upholding forfeiture clauses in competitive situations has been the fact that such contracts are supported by sound business practice. The contract involved in the instant appeal did not in any way prevent Mitchell from engaging in the business of selling insurance. The record before us indicates that Mitchell did, in fact, work for other companies after he left Southern Farm Bureau. The record also reveals that policies previously written in Alabama by Southern Farm Bureau remained in force and were serviced by other agents. It would be inherently unfair to allow Mitchell to continue to receive renewal premium commissions when he was selling insurance for competitors and when he expended no effort to service existing Southern Farm Bureau policies.
We must also reject Mitchell's argument that the clauses are void because they are unreasonable in scope. He claims that a covenant which prevents him from selling insurance for a competing insurance company while Southern Farm Bureau is licensed to do business in Alabama is overly broad. His argument ignores the fact that we are not dealing with an anti-competitive agreement prohibited by section 8-1-1 but rather with a forfeiture clause. As we have pointed out, the contract did not in any way prevent Mitchell from selling insurance within the state while Southern Farm Bureau was licensed to do business in Alabama. It merely contained the reasonable requirement, based on sound business practice, that he forfeit renewal premium commissions if he chose to work for a competitor.
Having determined that the contract between Mitchell and Southern Farm Bureau is valid, we must decide whether, by its terms, he is entitled to receive renewal premium commissions. We note that paragraph 2(B) is a general promise on Mitchell's part that he would not work for a competing insurance company. Paragraph 7(D)(2) operates to bar his right to receive renewal premium commissions only in the event that the contract has been terminated. Three conditions are contained in paragraph 6 which operate to terminate the contract. These are written notice by either party, an act of dishonesty or fraud on Mitchell's part, or his death or a determination by Southern Farm Bureau that he could not continue his duties.
Mitchell, in his brief and in argument, places great emphasis on the fact that the record is barren of any indication that the contract has been terminated by the occurrence of one of the three contingencies listed in paragraph 6. He argues that since the contract has not been terminated, paragraph 7(D)(2) does not come into play. He further contends that the terms of paragraph 2(B) are mere surplusage in the agreement and that they do not contain a penalty in the event that he works for a competitor. Southern Farm Bureau, on the other hand, argues that a finding of termination is not material to a determination of the issue at hand since either paragraph 2(B) or paragraph 7(D)(2) serves as a bar to any recovery by Mitchell.
We must agree with Mitchell that nothing in the record shows that the contract has been terminated. However, we must also agree with Southern Farm Bureau that such a finding is immaterial to the issue of whether Mitchell is entitled to receive renewal premium commissions. Even assuming that the contract has not been terminated and the provisions of paragraph 7(D)(2) have not come into play, paragraph 2(B) still contains a covenant on Mitchell's part that he would not work for a competing insurance company. In Seybold v. Magnolia Land Co., 376 So.2d 1083 (Ala. 1979), it was decided that a party breaches his agreement when he fails to perform an act which he is required to do. This rule, of course, applies with equal force to a negative covenant such as the one under which Mitchell promised not to be employed by a competitor of Southern Farm Bureau. When Mitchell entered into the employment of other insurance companies, he breached his agreement under paragraph 2(B) of the contract and cannot now rely on its terms *749 to seek damages from his former employer. Since an insurance agent has no absolute right to renewal premium commissions and must rely on the terms of his contract to receive them, Mitchell has no grounds to argue that Southern Farm Bureau owes him money on a contract he has breached. Southern States Life Insurance Co. v. Allan, supra.
Our finding that Mitchell's contract was valid and that its terms serve as an absolute bar to any recovery makes summary judgment in his favor an inappropriate remedy. Summary judgment may be granted only when the facts, viewed in a light most favorable to the nonmoving party, show that there is not even a scintilla of evidence in his favor. Blue Cross & Blue Shield of Alabama v. Bowen, 57 Ala.App. 192, 326 So.2d 754 (Ala.Civ.App.1976). The record reveals that the terms of the contract stand as an absolute bar to any recovery by Mitchell and shows that summary judgment should have been entered for Southern Farm Bureau. Thus, we reverse the trial court's decision to grant summary judgment in Mitchell's behalf and direct that it be entered for Southern Farm Bureau.
REVERSED AND REMANDED WITH DIRECTIONS.
WRIGHT, P.J., and HOLMES, J., concur.