This case involves a suit brought by Charles E. Crockett against Great-West Life Assurance Company ("Great-West") alleging the breach of a contract to pay commissions. Crockett also sued Chelsea Industries, Inc., and its subsidiary Webster Industries, Inc. ("Chelsea/Webster"), and Kathleen B. Morris, alleging an intentional interference with Crockett's contractual relationship with Great-West.[1] On August 10, 1990, the trial court granted the defendants' motions for summary judgment. We affirm.
 Facts
Crockett and Morris entered into an agreement to form American Investment Associates, Inc., a business in which Crockett and Morris would jointly engage in the business of selling insurance and mutual funds. Morris made the initial contact with Chelsea/Webster concerning the purchase of health, life, and disability coverage for Chelsea/Webster's union employees. Crockett found the insurance carrier, Great-West, and eventually Chelsea/Webster decided to retain coverage with Great-West. During the negotiations, Chelsea/Webster indicated that it wanted a multi-year contract, but Great-West refused this request. Instead, the contract was to be for one year. After January 1, 1987, the policy with Great-West has been *Page 1291 
renewed every year. Changes to the contract have essentially pertained to the premiums, and in 1988 to the designation of the agent of record.
When the policy first went into effect, both Crockett and Morris were designated as agents of record. It was agreed that the commissions received from the health insurance would be split 50-50 between Crockett and Morris and that all of the commissions from the life insurance would be paid to Morris. Before the effective date of the Great-West policy, the plan administrator for Chelsea/Webster, Sherry Gilliard, signed a document prepared by Morris and sent to Great-West that stated:
 "Please consider this as written confirmation that Ms. Kathleen B. Morris and Mr. Charles E. Crockett are to be designated as agents of record for the health, life and disability contract between Great-West Life Insurance Company and the Montgomery Webster collective bargaining unit employees, effective December 10, 1986, until termination of said contract."
Subsequent to this document, Crockett signed a group commission agreement with Great-West on June 17, 1987, which stated in part:
 "THE GREAT-WEST LIFE ASSURANCE COMPANY agrees to pay:
"Charles E. Crockett
 commissions on premiums paid in cash to the Company for the benefits which are included in the Group Policies specified [hereinafter] and issued to
"Chelsea Industries, Inc.
". . . .
 "Commission is payable to you for each of the first ten policy years unless the policyholder directs the Company in writing to recognize another agent."
Both Crockett and Morris received commission payments for the 1987 and 1988 policy years. On November 30, 1988, Larry W. Crabtree, plant manager for Webster Industries, Inc., designated a new agent of record. The letter to Great-West stated:
"AGENT OF RECORD DESIGNATION
 "Webster Industries, Inc., a subsidiary of Chelsea Industries, Inc., group number 38659/5221, hereby designates Kathleen B. Morris as sole agent of record for the aforementioned health and disability insurance contract between Webster Industries, Inc., d/b/a Chelsea Industries, Inc., effective immediately. All commissions for this account are due and payable to Ms. Morris, effective with the January 1, 1989 commission payment for commissions due and payable at that time. All other designations of agent of record, either individually or jointly, are hereby revoked and therefore null and void."
Because Crockett did not receive any commissions in January 1989, he sued. In granting the defendants' motions for summary judgment the trial court stated:
 "This case is submitted to the Court on Defendants' Motions for Summary Judgment. Having considered the same it is the opinion of this Court that said motions are due to be granted.
 "This action arises out of contractual relationships between the parties. The issue before the Court is whether the Plaintiff is entitled to commissions from Great-West Life Assurance Company for 1989 and following on its policy agreement with Webster/Chelsea.
 "In this case, there was a policy agreement between Webster/Chelsea, the policyholder, and Great-West Life Assurance Company. There was also an agreement between plaintiff, Crockett, and Great-West which contained a provision that the insured [Webster/Chelsea] retained the right to designate the agent who would receive commissions on premiums. Initially, the commissions were divided between Kathleen B. Morris and Charles E. Crockett for the years 1987 and 1988. In November 1988, the insured, Webster/Chelsea, as was permitted by the agreement, revoked their designation of Crockett as an agent of record and designated Morris as its sole *Page 1292 
agent with all commissions from said contract payable to her.
 "Crockett argues that he is entitled to one-half of the commissions during the existence of the policy and that Great-West breached the contract by failing to pay the commissions to him after Morris was designated as the sole agent of record. However, the agreement between Crockett and Great-West states that the 'commission is payable to [Crockett] for each of the first ten policy years unless the policyholder directs the Company in writing to recognize another agent.' [Emphasis added in the trial judge's order.] Such language does not vest Crockett with an irrevocable designation as an agent for Great-West.
 "The general law in Alabama is that an insurance agent has no absolute right to renewal commissions. If a right does exist it arises from the terms of the contract between the agent and the company. Southern Farm Bureau Life Ins. Co. v. Mitchell, 435 So.2d 745, 747
(Ala.Civ.App. 1983), [Southern States Life Ins. Co.] v. Allan, 38 Ala. App. 467, 87 So.2d 439, 445 (1956). In this case, according to the agreement between Great-West and Crockett, he was entitled to receive commissions only so long as he was designated by the policyholder, and the policyholder had the right at any time to designate another agent of record.
 "Therefore, because Crockett's commissions were paid to him in 1987 and 1988 and since thereafter Crockett was not designated by Webster/Chelsea as an agent entitled to commissions under the annual contract between Great-West and Webster/Chelsea, no breach has occurred. It is therefore,
 "ORDERED, ADJUDGED AND DECREED that Defendants' Motions for Summary Judgment be and the same are hereby GRANTED."
 Arguments
1. Crockett's Arguments:
On appeal, Crockett first asserts that he was legally entitled to collect renewal commissions under Ala. Code 1975, § 27-8-1 et seq., specifically § 27-8-27(c)(1), even though he was not licensed with the State of Alabama as an agent of Great-West. Besides citing § 27-8-27(c)(1), Crockett provides no legal arguments in support of this first assertion.
Crockett also argues that when Chelsea/Webster, through its plan administrator, designated Crockett and Morris as agents of record "effective December 10, 1986, until termination of said contract," they waived or surrendered their right to change that agent of record designation for as long as that policy contract remained in effect. Crockett states that the policy was renewed every year beginning January 1, 1987, without substantial change; that the same policy number was used every year; that no new policy contract was issued to replace the original contract; and that the policy could have been canceled on any anniversary, but never was. Crockett additionally argues that the phrase "until termination of said contract" is unambiguous; but even if the term is found to be ambiguous, its meaning becomes a jury question, thus making the entry of summary judgment improper.[2]
2. Great-West's Arguments:
In addressing Crockett's second argument,[3] Great-West contends that Chelsea/Webster retained the sole right to designate an agent of record to receive commissions on the policy issued by Great-West to Chelsea/Webster. Thus, Great-West states that Chelsea/Webster could *Page 1293 
terminate the agent of record or add a new one at any time. Great-West contends that its only obligation under the written contract between it and Crockett was to pay commissions to the agent designated by Chelsea/Webster. Consequently, Great-West contends that the only issue presented in this case is whether Great-West is governed by its contractual relationships.
3. Chelsea/Webster's Arguments:
Chelsea/Webster argues that the summary judgment was proper because the contract between Crockett and Great-West provided that Crockett would receive commissions "unless the policyholder [Chelsea/Webster] direct[ed] the company [Great-West] to recognize another agent." Chelsea/Webster states that it revoked all previous designations of agents of record and specifically designated Morris as its sole agent of record. Thus, Chelsea/Webster concludes that when it designated Morris as the sole agent of record, Crockett was no longer entitled to receive commission payments from Great-West.
4. Morris's Arguments:
Morris first argues that Ala. Code 1975, § 27-8-27, applies. Specifically, she relies on § 27-8-27(a). She contends that the initial contract between Great-West and Chelsea/Webster, which became effective in January 1, 1987, ended on December 31, 1987, because the contract was an annual contract and not a perpetual contract, and that a new contract was formed in each subsequent year. Morris further contends that Chelsea/Webster retained the right to change the agent of record in the annual contract, and in fact did so in November 1988. Thus, Morris concludes that because a new contract was created annually, § 27-8-27(a) controls, and not §27-8-27(c)(1) as Crockett asserts.
Second, Morris argues that even if this Court finds that the commissions in question are "renewable," the initial agent-of-record designation signed by Sherry Gilliard in 1986 was superseded by Crockett's commission agreement with Great-West, which was signed on June 17, 1987. Morris contends that because Chelsea/Webster designated another agent of record in writing on November 30, 1988, the agreement between Crockett and Great-West would control and the summary judgment would be proper.[4]
 Discussion
The issue presented is whether the trial court erred in entering the defendants' summary judgment. In its order, the trial court found that the agreement between Great-West and Crockett provided that Crockett would receive his commission unless the policyholder, Chelsea/Webster, directed Great-West in writing to recognize another agent. The trial court concluded that, based upon this agreement, Crockett was not entitled to receive any commission payments under the annual contracts between Great-West and Chelsea/Webster after 1988 because Chelsea/Webster sent written notification that Morris was to be the sole agent of record.
Rule 56, A.R.Civ.P., provides that in order to enter a summary judgment the trial court must determine: (1) that there is no genuine issue of material fact; and (2) that the moving party is entitled to a judgment as a matter of law. All reasonable doubts concerning the existence of a genuine issue of material fact must be resolved against the moving party.Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990). Once the moving party makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the nonmovant, who must go forward with evidence demonstrating the existence of a genuine issue of material fact. Grider v. Grider, 555 So.2d 104 (Ala. 1989).
Because this action was not pending on June 11, 1987, Ala. Code 1975, § 12-21-12, mandates that the nonmovant meet his burden by "substantial evidence." Bass v. *Page 1294 SouthTrust Bank of Baldwin County, 538 So.2d 794,797-98 (Ala. 1989). Under the substantial evidence test the nonmovant must present "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life Assurance Co. ofFlorida, 547 So.2d 870, 871 (Ala. 1989). More simply stated, "[a]n issue is genuine if reasonable persons could disagree." W. Schwarzer, Summary Judgment Under the FederalRules: Defining Genuine Issues of Material Fact,99 F.R.D. 465, 481 (1982).
In reviewing the evidence presented to the trial court on the defendants' motions for summary judgment, we conclude that the trial court was correct in finding that the defendants had made a prima facie showing that no genuine issue of material fact existed. We also conclude that Crockett has failed to carry his burden of presenting substantial evidence to show an issue of material fact on which reasonable persons could disagree.
The contract between Great-West and Chelsea/Webster provides Chelsea/Webster with the right to designate an agent of record and the right to change this designation at any time. As stated by the trial court, it is the general law in Alabama that an insurance agent does not have an inherent right to renewal commissions. Such a right can arise only from the terms of the contract between the agent and the agent's company.Southern Farm Bureau Life Ins. Co. v. Mitchell,435 So.2d 745 (Ala.Civ.App. 1983); Southern States Life Ins. Co.v. Allan, 38 Ala. App. 467, 87 So.2d 439 (1956).
In this case, Crockett had the right to receive renewal commissions only as long as he was designated as the agent of record by Chelsea/Webster. For the policy years 1987 and 1988, both Crockett and Morris were designated by Chelsea/Webster as agents of record. However, for the 1989 policy year, Chelsea/Webster designated Morris as the sole agent of record. This change of the agent of record was within Chelsea/Webster's rights under its contract with Great-West.
Crockett contends that the document signed by the plan administrator, Sherry Gilliard, created an irrevocable designation by Chelsea/Webster because of the language "effective December 10, 1986, until termination of said contract." However, the evidence presented reveals that the "said contract" was an annual contract. Crockett argues that the contracts in subsequent years must be viewed as parts of the original because: (1) the contract was renewed every year; (2) the same policy number was used; (3) no new policy contract was actually issued to replace the original contract; and (4) the policy was never canceled on any anniversary. Although Chelsea/Webster renewed its policy with Great-West without substantial changes, such "change[s] [are] tantamount to a request for renewal and in [the] absence of an agreement to change [the] policy[,] each renewal of an existing policy will by implication include and adopt the provisions of [the] existing policy." Alabama Farm Bureau Mut. Cas. Ins. Co. v.Adams, 289 Ala. 304, 310, 267 So.2d 151, 156 (1972). As stated in City Mortgage Discount Co. v. Palatine Ins.Co., 226 Ala. 179, 181, 145 So. 490, 490 (1933):
 "A renewal is, in effect, a new contract
of insurance, especially when not provided for in the original policy, at least in the sense that it requires the mutual assent of the parties and a new consideration. The agreement to renew must have all the essentials for a valid contract."
(Emphasis added.) The Court in City Mortgage Discount also stated that an anterior or contemporaneous agreement is ineffective unless it is incorporated into and made a part of, the policy. Id. at 181,145 So. at 490.
The document signed by Chelsea/Webster's plan administrator was based upon a one-year contract with Great-West that was renewed annually. The evidence indicates that before the lapse of the policy each year, Chelsea/Webster met with Great-West to negotiate new terms — primarily *Page 1295 
the premiums — in the policy, which was renewed from the initial effective date of January 1, 1987. Other than changes in the premium payments, no substantial changes were made until November 30, 1988, when Chelsea/Webster designated Morris as the sole agent of record. Changing the agent of record was within Chelsea/Webster's rights under its agreement with Great-West. Also, because the document signed by Gilliard was based on an annual contract between Chelsea/Webster and Great-West, Crockett did not have an irrevocable right to receive commission payments and Chelsea/Webster did not waive or surrender its right to change the agent of record.
Based upon the foregoing discussion, we conclude that Ala. Code 1975, § 27-8-27(a), controls, because the contract between Chelsea/Webster and Great-West was an annual contract and because Chelsea/Webster retained the right to change the agent of record. Section 27-8-27 provides:
 "(a) No insurer, agent or broker shall pay, directly or indirectly, any commission or other valuable consideration to any person for services as an agent or broker within this state unless such person holds a currently valid license as an agent or broker as to the kind or class of business involved as required by this chapter.
". . . .
 "(c) The provisions of this section shall not prevent:
 "(1) Payment of renewal or other deferred commissions to any person solely because such person has ceased to hold a license to act as an agent or broker."
In licensing an agent, Great-West would have had to renew Crockett's license. However, Great-West did not renew Crockett's license after 1988, which was a new contract year between Great-West and Chelsea/Webster. If Chelsea/Webster had not designated Morris as the sole agent of record in 1988, § 27-8-27(c)(1) would have applied to Crockett. However, Chelsea/Webster did designate another agent of record; thus § 27-8-27(c)(1) does not apply.[5]
The trial court did not specifically address Crockett's claim that Chelsea/Webster and Morris interfered with his contractual relationship with Great-West. However, the trial court did implicitly rule on Crockett's claims against Chelsea/Webster and Morris when it entered summary judgment for all the defendants. See Poston v. Gaddis, 372 So.2d 1099
(Ala. 1979). In addition, Crockett himself did not address this issue in his brief except to argue that his tort claim was not preempted by the Employees Retirement Income Security Act (ERISA). We conclude that Crockett failed to prove the elements of a cause of action alleging the intentional interference with a contractual or business relationship.
The elements of this cause of action are as follows: (1) the existence of a contract or business relation; (2) the defendant's knowledge of the contract or business relation; (3) intentional interference by the defendant with the contract or business relation; and (4) damage to the plaintiff as a result of the defendant's interference. Justification for the interference is an affirmative defense that must be pleaded and proved by the defendant. Caine v. American Life AssuranceCorp., 554 So.2d 962 (Ala. 1989); Gross v. LowderRealty Better Homes Gardens, 494 So.2d 590 (Ala. 1986). In the past we have listed an absence of justification for the defendant's interference as one of the elements of the plaintiff's cause of action; however, we recognize that it is illogical to continue to list an absence of justification as an element of the plaintiff's cause of action and to place the burden on the defendant to disprove it. See Century 21Academy Realty, Inc. v. Breland, 571 So.2d 296 (Ala. 1990).
In the present case, we have determined that an annual contract was created between Great-West and Chelsea/Webster. *Page 1296 
Chelsea/Webster retained the right to change the agent of record at any time, and in 1988 it did. The defendants made a prima facie showing that there had been no breach of contract and no interference with a contractual relationship of Crockett's. Crockett presented no evidence of breach of contract and no evidence that either Chelsea/Webster or Morris intentionally interfered with a contractual or business relationship of Crockett with Great-West. Consequently, we hold that the summary judgment was proper.
89-1824 AFFIRMED.
89-1845 AFFIRMED.
ALMON, ADAMS, STEAGALL and INGRAM, JJ., concur.
[1] Morris cross-appealed the trial court's final order holding that Crockett's intentional-interference-with-a-contractual-relationship claim was not preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001-1461 (1988).
[2] Crockett makes an additional argument in response to Morris's claim that his tort claim against her is preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001
et seq. (1988). However, because we affirm the trial court's summary judgment for all the defendants, we do not address this argument.
[3] Great-West does not address either the first issue or the third issue raised by Crockett. Great-West states that the first issue was not a basis for the summary judgment. In regard to the third issue, Great-West states that that issue does not involve Great-West.
[4] We do not address Morris's argument that Crockett's claim alleging the tort of intentional interference with a contractual relationship is preempted by the Employee Retirement Income Security Act of 1974.
[5] Because we affirm the trial court's summary judgment for Morris, we do not address her cross-claim concerning the preemption of Crockett's intentional-interference-with-a-contractual-relationship claim by the Employee Retirement Income Security Act.