# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**


## NO. 02-12-00249-CV

PAUL LAIR                                                APPELLANT

V.

BRANDI LAIR                                         APPELLEE

----------

## FROM THE 360TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In this appeal from a final judgment granting divorce and a final order in a suit affecting a parent-child relationship (SAPCR) favorable to Appellee Brandi Lair, pro se Appellant Paul Lair, who appeared at trial by telephone, contends in three issues that the trial court abused its discretion by (1) allowing retained trial counsel to withdraw but denying Paul's requested continuance to obtain

---

[1]*See* Tex. R. App. P. 47.4.

substitute counsel; (2) imposing allegedly unrealistic restrictions in the possession order—specifically, allowing Paul to contact the parties' two minor children by telephone only on Wednesdays from 7:00 p.m. to 7:15 p.m., knowing that he is in prison; and (3) dismissing Paul's postjudgment motion for enforcement based solely on the fact that he was incarcerated, unrepresented, and otherwise unable to appear without the trial court providing alternative means for him to appear. Because the enforcement issues are not properly before us, we dismiss them. Because we hold that the trial court did not abuse its discretion in the trial or resulting divorce decree and SAPCR order, we affirm the trial court's judgment dated May 24, 2012.

In his first issue, Paul contends that the trial court abused its discretion by allowing his retained trial counsel to withdraw but denying Paul's requested continuance to obtain counsel. We review a trial court's ruling on a lawyer's motion to withdraw for an abuse of discretion.[2] Rule 10 of the rules of civil procedure provides that in cases like this one, in which

> another attorney is not to be substituted as attorney for the party, the motion shall state: that a copy of the motion has been delivered to the party; that the party has been notified in writing of his right to object to the motion; whether the party consents to the motion; the party's last known address and all pending settings and deadlines.[3]

---

[2] *In re M.D.W.*, No. 02-13-00013-CV, 2013 WL 3326664, at *2 (Tex. App.—Fort Worth June 27, 2013, pet. denied) (mem. op.).

[3] Tex. R. Civ. P. 10.

Additionally, as this court has previously explained, rule 10

> provides that an attorney may withdraw from representing a party only upon written motion for good cause shown. Rule 10 does not define "good cause," but courts view the Texas Disciplinary Rules of Professional Conduct as guidelines articulating considerations relevant to a "good cause" determination supporting a Rule 10 motion to withdraw.[4]

Disciplinary Rule 1.15(b) allows a lawyer to withdraw if

> (1) withdrawal can be accomplished without material adverse effect on the interests of the client;
>
> . . . .
>
> (5) the client fails substantially to fulfill an obligation to the lawyer regarding the lawyer's services, including an obligation to pay the lawyer's fee as agreed, and has been given reasonable warning that the lawyer will withdraw unless the obligation is fulfilled;
>
> (6) the representation will result in an unreasonable financial burden on the lawyer or has been rendered unreasonably difficult by the client; or
>
> (7) other good cause for withdrawal exists.[5]

Paul contends that he was not notified in advance that his counsel intended to move for withdrawal and that his counsel's motion to withdraw does not appear in the record. That motion was in the trial record, however, and is now part of the record before us. The motion was filed on March 29, 2012, and it provides,

---

[4] *Hovious v. Hovious*, No. 02-04-00169-CV, 2005 WL 555219, at *2 (Tex. App.—Fort Worth Mar. 10, 2005, pet. denied) (mem. op.) (citations omitted).

[5] Tex. Disciplinary Rules Prof'l Conduct R. 1.15(b), *reprinted in* Tex. Gov't Code Ann. tit. 2, subtit. G, app. A (West 2013) (Tex. State Bar R. art. X, § 9).

3

1.    Movant is attorney of record for Paul Joseph Lair Jr., and was employed to represent [him].

2.    [Paul] has failed to comply with the terms of the employment agreement with Movant.

3.    This withdrawal is not sought for delay, but that [Paul] might be represented by counsel of his choice.

4.    The last known address of Paul Joseph Lair Jr. is as follows: James H. Byrd Unit, 21 FM 247, Huntsville, TX 77320. TDCJ # 01767862.

5.    The last known phone number of Paul Joseph Lair Jr. is 817-884-1187.

6.    A copy of this motion has been delivered to Paul Joseph Lair Jr., who was thereby notified in writing of his right to object to this motion.

7.    Movant does not know at this time if Paul Joseph Lair Jr. consents to this motion as telephone or email contact is not permitted with him at this time.

8.    **Pending settings and deadlines:**

**Final Trial:  May 23, 2012 at 1:30 p.m., 360th District Court, Tarrant County Family Law Center, 200 E. Weatherford St., Fort Worth, Texas 76196.**

Paul never filed an objection to the motion.  As Paul admits, the trial court allowed his retained counsel to withdraw because Paul "fail[ed] to complete his financial arrangement with [retained counsel] before the final hearing."  Because the motion substantially complies with rule 10, and a client's failure to pay his lawyer is a valid ground for withdrawal under rule 1.15, we hold that the trial court did not abuse its discretion by allowing Paul's retained counsel to withdraw.

4

We also review a trial court's ruling on a motion for continuance for an abuse of discretion.[6] Rule 251 of the rules of civil procedure provides that no continuance shall be granted "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law."[7] The trial court granted retained counsel's motion to withdraw on April 19, 2012, more than a month before the trial setting; thus, the trial court did not allow retained counsel to withdraw at "the midnight hour" as Paul alleges. Paul knew at least by May 2, 2012 that he no longer had counsel; that was the filing date of his "Original Answer, Request for Appointment of Attorney ad Litem[,] Motion for Continuance[,] and Motion for Issuance of Bench Warrant." In that motion, Paul sought "a continuance of this action until such time as [he would be] able to appear in court and defend this suit on his own volition for the purpose of a trial in the above cause" and "to secure and meet with [an] attorney to present facts, discuss options and prepare an adequate defense[, a]s well as to allow [him] to assist counsel in the presentation of evidence, cross-examination of witnesses and defense of this suit."

His motion also provides,

---

[6]*See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002); *In re F.M.B.*, No. 02-12-00153-CV, 2014 WL 70108, at *3 (Tex. App.— Fort Worth Jan. 9, 2014, no pet.) (mem. op.).

[7]Tex. R. Civ. P. 251.

[Paul] is presently incarcerated in the Estelle Unit of the Texas Department of Criminal Justice as a result of the conviction of a felony offense. [He] alleges that due to conviction an impartial and non-prejudicial decision with regard to his parental rights and property cannot be established at this time. [Paul]'s conviction has been appealed on the basis of innocence and in light of new evidence the Federal Bureau of Investigation has filed a report on his behalf. [Paul] requests a continuance until this action is complete to preserve [his] parental rights and before any changes or final decisions are to be made.

Although the trial court had discretion to appoint counsel, Paul was not entitled to appointed counsel.[8] Further, his May 2, 2012 filing shows that he knew three weeks before the trial setting that he wanted a continuance, but he waited until the day of trial to present the motion to the trial court.[9] We therefore cannot conclude that the trial court abused its discretion by denying Paul a continuance to retain new counsel. We also cannot fault the trial court for refusing to grant an unlimited continuance pending the resolution of Paul's criminal case.

---

[8]*See* Tex. Gov't Code Ann. § 24.016 (West 2004); Tex. Fam. Code Ann. § 107.021(a) (West 2014); *Gibson v. Tolbert*, 102 S.W.3d 710, 712–13 (Tex. 2003).

[9]*See Mote Res., Inc. v. Gardner*, No. 02-12-00175-CV, 2013 WL 6046530, at *8–9 (Tex. App.—Fort Worth Nov. 14, 2013, no pet. h.) (mem. op.) (considering the presentment of the motion for continuance on the same day as the hearing sought to be continued in holding that the trial court did not abuse its discretion); *In re M.S.*, No. 06-12-00089-CV, 2013 WL 772878, at *2 (Tex. App.—Texarkana Feb. 28, 2013, no pet.) (mem. op.) ("[T]he motion for continuance was not presented until the day of trial, and Father failed to support this late motion with any reason that should not have been apparent to him weeks earlier. Therefore, the trial court was within its discretion to deny the motion.").

To the extent that Paul's oral request for a continuance to obtain counsel urged on the day of trial is treated as a second motion for continuance, it was not supported by affidavit. If a motion for continuance does not comply with rule of civil procedure 251, we presume that a trial court does not abuse its discretion by denying the motion.[10] Rule 251 requires the motion to be "supported by affidavit."[11] Paul's oral motion for continuance therefore did not comply with rule 251, and the trial court did not abuse its discretion by denying it. We overrule Paul's first issue.

In his third issue, Paul complains of the dismissal of a postjudgment enforcement motion filed more than four months after the trial court signed the judgment of divorce and during the pendency of this appeal. The trial court had already lost plenary power over the judgment when the motion was filed.[12] In fact, the order dismissing Paul's enforcement action for want of prosecution was signed more than fourteen months after the final divorce decree and order in SAPCR. Paul's notice of appeal does not reference the order dismissing the enforcement action, which was signed more than a year after the notice of

---

[10]*Villegas v. Carter,* 711 S.W.2d 624, 626 (Tex. 1986).

[11]*See* Tex. R. Civ. P. 251; *In re A.K.M.*, No. 02-12-00469-CV, 2013 WL 6564267, at *3 (Tex. App.—Fort Worth Dec. 12, 2013, no pet.) (mem. op.).

[12]*See* Tex. R. Civ. P. 329b(c), (d); *L.M. Healthcare, Inc. v. Childs*, 929 S.W.2d 442, 444 (Tex. 1996) (op. on reh'g) ("The trial court's plenary jurisdiction cannot extend beyond 105 days after the trial court signs the judgment.").

appeal was filed. Thus, Paul's notice of appeal from the judgment of divorce and order in SAPCR did not perfect appeal as to the subsequent appealable dismissal order on his enforcement motion.[13] Paul did not file a notice of appeal from the dismissal order.[14] In the interest of justice, we point out that the dismissal order was without prejudice.[15] But because Paul did not timely perfect an appeal from that order, we have no jurisdiction to entertain issues about that order in this appeal.[16]

In his second issue, Paul complains about the trial court's "imposing unrealistic restrictions" on his access to the children "by allowing [him] the right to only call his children by telephone on Wednesdays from 7:00 p.m. to 7:15 p.m., knowing [he] is incarcerated." As we recently explained,

> We review the trial court's decisions on custody, control, possession, and visitation matters for an abuse of discretion. To determine whether a trial court abused its discretion, we must decide whether the trial court acted without reference to any guiding rules or

---

[13]*See* Tex. R. App. P. 25.1; *Rainbow Group, Ltd. v. Wagoner*, 219 S.W.3d 485, 492–93 (Tex. App.—Austin 2007, no pet.); *see also Allen v. Allen*, 717 S.W.2d 311, 312–13 (Tex. 1986) (holding postjudgment order disposing of all matters placed before trial court in postjudgment motion is final and appealable).

[14]*See* Tex. R. App. P. 25.1.

[15]*See Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 855 (Tex. App.—Houston [14th Dist.] 2001, pets. denied) (op. on reh'g) ("A dismissal without prejudice means the claimant has the right to sue again on the same cause of action.") (citation and internal quotation marks omitted).

[16]*See* Tex. R. App. P. 25.1; *In re L.K.H.*, No. 05-08-01191-CV, 2009 WL 565723, at *1 (Tex. App.—Dallas Mar. 6, 2009, pet. denied) (mem. op.).

principles; in other words, we must decide whether the act was arbitrary or unreasonable. Legal and factual sufficiency are not independent grounds of error in this context, but they are relevant factors in deciding whether the trial court abused its discretion. The best interest of the child shall always be the primary consideration in determining the issues of conservatorship and possession of and access to the child.[17]

Paul sought contact with the children. When the trial court asked if he wanted them to visit him "every so often," he replied,

> At least with my parents, I would love that. But . . . [Brandi] has denied me any contact, phone contact, written contact, for a couple of years now[,] even against court orders.
>
> . . . .
>
> I have had no updates health-wise, school-wise, and that's what I'm trying to protect. Before these accusations came out [from other children], I can show the CPS interview with my children that showed that I was the primary caregiver and that no abuse had ever occurred to them.
>
> My only intention is to stay in contact with my children. And I don't feel I can do that at this time. I have not been allowed to do that by [Brandi].

The trial court stated at the trial that Brandi and the paternal grandparents had agreed that the children would have some contact with the paternal grandparents. The trial court also stated on the record that if the paternal grandparents had the children periodically, there would be no harm in the grandparents allowing the children telephone contact with Paul.

---

[17]*Ruiz v. Ruiz*, No. 02-12-00136-CV, 2013 WL 530958, at *2 (Tex. App.—Fort Worth Feb. 14, 2013, no pet.) (mem. op.) (citations omitted).

9

Brandi told the trial court that Paul wanted the children to mail letters to the paternal grandparents and that she was amenable to that. She also stated that he mailed "stuff" to the children without providing his prison address; she did not indicate that she wanted him to stop contacting the children by mail. She additionally told the trial court when asked that she would have no issues with the paternal grandmother sending pictures of the children to Paul. She stated that she and the children "talked to him all the way up until the day he was found guilty—or not innocent of the two felonies."

She also stated that while she would "keep contact" with his parents, she did not want the children to be required to see Paul in prison and did "not feel that he should get to see them." She additionally stated that she and the children have pictures of Paul at home and talk about his parents and him in only positive terms.

Brandi testified that while the divorce was pending, Paul moved for more access, and she and Paul agreed that he would have two 15-minute periods of telephone access weekly, from 7:00 p.m. until 7:15 p.m. But according to Brandi, Paul, who was responsible for calling, would routinely not call at 7:00 p.m. and would not answer the telephone when she called him at 7:00 p.m. on behalf of the children. While he would call at 7:30 or 8:00 p.m., that was outside the agreed-upon time period and conflicted with the children's bedtime. Paul's only excuse for not following the agreement, according to Brandi, was that he was

10

driving at 7:00 p.m.  Paul told the trial court that there had been no set time for him to call the children under the temporary agreement.

Paul also told the trial court that he could have visitation with the children every weekend at the prison, that he had telephone access in his prison unit from 6:00 p.m. to 10:00 p.m. every night, that "we [could] put that in a court order," and that he did not "have to check with anyone in advance."  He testified that there were not certain days of the week that would be easier than other days, stating that "it's all the same, Your Honor."  Paul answered affirmatively the trial court's question, "Can you get permission to, say, do 7:00 or 7:15 phone contact from time to time?" and did not object or complain that fifteen minutes from time to time would not be enough access.

Paul's mother testified, and the trial court ensured that Paul heard, that the telephone used would have to be registered.  Brandi testified that she had a land line and would not object to Paul having telephone contact with the children "from time to time" and "once a week or once every other week" as long as she did not have to pay for it.  The trial court announced on the record while Paul was still present by telephone that contact once a week was reasonable.

Brandi's lawyer told the trial court that Paul had been sentenced to life on one count and twenty years' confinement on the other count, that the sentences had been stacked, and that Paul would be confined "for a long time."  The lawyer also told the trial court that Brandi did not want Paul to have access to his children because of his long sentence and because "[h]e's a sexual predator."

11

Paul did not object to the lawyer's statements.  Paul never told the trial court how much telephone access he wanted or otherwise specifically complained about the access issue at trial.

Paul wanted joint managing conservatorship.  The trial court said,

It just can't happen physically.  You're not in a position where you're going to be able to do much as far as participation and these kids['] rights.

. . . .

What I'm going to put in the order is that she consult with you, but ultimately she's going to make the final decision.  But I'm going to ask that she consult with you prior to making decisions.  Because even though you're incarcerated, and that's a terrible thing for these kids to have to live with, you are a dad.

The trial judge told Paul, "I'm going to let you go here.  They're going to do some jurisdictional prove-ups to finalize this divorce.  I'm going to make a decision about the case.  And then we'll send you a copy of that decision as quickly as possible.  Okay?"  Paul responded, "Okay, Your Honor," and did not object or otherwise complain to the trial court about the trial court's decision to end the telephone call with him before the trial ended.

In the decree, after finding that Paul had been convicted of two felonies involving sexual misconduct with a child, the trial court found that "telephone access only" was in the children's best interest and ordered that Paul have no right of possession of the children.  The trial court also ordered,

Paul Lair shall have telephone access to the children for fifteen minutes per week while school is in session at no cost to Brandi Lair.

IT IS ORDERED that Paul Lair shall have telephone access on the appropriate Wednesdays from 7:00 p.m. to 7:15 p.m., or at such other times as may be mutually agreed to by the parties in advance; PROVIDED, HOWEVER, should Paul Lair fail to call between 7:00 p.m. and 7:15 p.m. on the appropriate Wednesday, he shall not be entitled to any time extension or make up time.

In the event that the telephone access cannot be arranged on the appropriate day and time as set out above due to no fault of Brandi Lair, then IT IS ORDERED that Brandi Lair may offer to Paul Lair an appropriate make up telephone access time.

The trial court additionally ordered in the decree that Brandi inform Paul in a timely manner of significant information concerning the health, education, and welfare of the children and that she consult with Paul before consenting to medical, dental, or surgical treatment of the children involving invasive procedures or to psychiatric or psychological treatment of the children.

Given the nature of Paul's convictions, which this court upheld in a separate opinion,[18] the trial court's findings, Brandi's agreements on the record regarding contact with the grandparents, the requirements in the decree that Brandi keep Paul apprised of major events affecting the children and that she consult with him before making major medical decisions, and Paul's statements to the court that telephone access would not be a problem in his unit, we cannot say that the trial court abused its discretion by naming him a possessory conservator or limiting his telephone contact. We therefore overrule that portion

---

[18]*See Lair v. State*, No. 02-12-00068-CR, 2013 WL 4033618 (Tex. App.— Fort Worth Aug. 8, 2013, pet. ref'd) (mem. op., not designated for publication).

of Paul's second issue in which he complains about the trial court's restricting his access to the children while naming him a possessory conservator.

To the extent that Paul complains in the remainder of his second issue that Brandi has not complied with the trial court's divorce decree and final SAPCR order, we dismiss the remainder of the second issue; those complaints are not properly before us for the reasons discussed in our resolution of his third issue.

Having overruled Paul's dispositive issues, we affirm the trial court's judgment.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL:  DAUPHINOT, GARDNER, and WALKER, JJ.

DELIVERED:  June 26, 2014